THE PURISSIMA CONCEPCION.[1]

UNITED STATES *v.* THE PURISSIMA CONCEPCION.[1]

*(Circuit Court, E. D. Louisiana.   June, 1885.)*

CUSTOMS DUTIES—FORFEITURE—ACT OF JUNE 22, 1874.
      Under section 16 of the act of congress approved June 22, 1874, (Supp. Rev. St. p. 80,) in order to adjudge a forfeiture or a penalty, the court or jury must find that the act charged was committed with an *actual intention* to defraud the *United States.*

Appeal from District Court.

*J. W. Gurley,* Asst. Dist. Atty., for the Government.

*John D. Rouse* and *Wm. Grant,* for claimants.

PARDEE, J.   That the seized goods were not placed by the master on his sworn manifest, and were concealed on the ship, and the master did offer money to the seizing officers, not only justifies the seizure, but makes a strong *prima facie* case for the government in demanding the penalty against the ship, and the condemnation of the goods.   The claimant meets this *prima facie* case with the defense that the goods were not brought to this port for sale, use, or consumption in the United States, but were goods belonging to the owner, in transit to Spain, and that they were not omitted from the manifest nor concealed with any intent to defraud the United States.   His

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

proof largely consists of a letter written by the owner to the master, directing the purchase in Havana of the goods, and giving instructions how to bring them into Spain, and of the testimony of the master, taken under commission.

The government has moved to suppress both the letter and commission. The letter is objected to because it is not a sworn statement, because there was no opportunity for cross-examination, and because a party cannot make evidence for himself. The commission is objected to because the evidence of the master therein conflicts directly with the sworn statements of the same master in the manifest. The history of the letter shows that it was written by the owner to the master long prior to the purchase even of the seized goods, when use of it as evidence could not have been contemplated, and it was turned over at the time of the seizure to show the intention of the master in the premises. As a fact in the history of the case, it would seem admissible to have such effect as properly entitled to in connection with the other circumstances in the case. The objection to the commission goes to its effect rather than to its admissibility. The oath attached to the manifest, and taken by the master, was the formal oath prescribed by the statute. The manifest seems to have been made out in English and Spanish, but the oath seems only to have been taken in English. It is only by considering that the master understood no English, and that the oath was taken carelessly and negligently, and in short was a "custom-house oath," that any credence can be given to the master's evidence taken under the commission; as tho two are diametrically opposed. And the same suspicion must attach to the evidence of the master, relating to the circumstances under which he offered money to the seizing officers. However, taking the evidence as the whole of it strikes my mind, the following appears to be the true inwardness of the case.

The Purissima Concepcion was in Havana, destined to come to New Orleans in ballast, there to take a cargo of staves to Spain. The owner, living in Seville, desired to import from Cuba some tobacco, probably without paying duties or charges to the Spanish government, and he, therefore, by letter directed the master how to obtain the means, and make the purchase, concealing from the merchants the object, and how to conceal the tobacco under the staves so as to have no trouble in entering the Spanish port, using this language: "I need not tell you that on your arrival at Benanza you bring the above under the staves better than in the cabin, the secret in which has been denounced," etc. The master made the purchase as directed, and concealed the tobacco in the cabin to enter New Orleans, undoubtedly intending to again hide it under the staves when the cargo should be taken aboard. The master omitted the tobacco from the manifest in New Orleans, not from ignorance of the requirements of our customs regulations, for he placed other goods in transit thereon, but because he did not desire trouble to himself here in bonding and accounting

for the tobacco, nor to embarrass himself in his ultimate intention of smuggling the tobacco into Spain. On the goods being found by the inspectors of customs, he offered money to get himself out of trouble, without any particular care whether it was received as a bribe or as duties. These I think to be the real facts of the case as developed by the proof.

Under such a showing it would seem there ought to be no trouble in condemning the goods as forfeited, and condemning the ship for the statutory penalty equal to the value of the goods. See section 2809, Rev. St., which provides that where goods are brought in the United States in any vessel from any foreign port, which shall not be included or described in the manifest, the master shall be liable to a penalty equal to the value of the goods, and the goods so omitted, when belonging to the master, officers, or crew of the vessel, shall be forfeited. But there is trouble. Section 16 of an act of congress approved June 22, 1874, (see Supp. Rev. St. 80,) provides as follows:

"That in all actions, suits, and proceedings in any court of the United States now pending, or hereafter commenced or prosecuted, to enforce or declare the forfeiture of any goods, wares, or merchandise, or to recover the value thereof, or any other sum alleged to be forfeited by reason of any violation of the provisions of the customs revenue laws, or any such provisions, in which action, suit, or proceeding an issue or issues of fact shall have been joined, it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to defraud the United States, and to require upon such proposition a special finding by such jury; or, if such issues be tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact. And in such cases, unless intent to defraud shall be so found, no fine, penalty, or forfeiture shall be imposed."

Under this section, in order to adjudge the forfeiture and the penalty in this present case, the court must find that the master omitted the goods from the manifest with *an actual intention* to defraud the *United States*. This actual intention to defraud the United States does not appear from the evidence,—the contrary seems more probable,—so that while I condemn the conduct of the owner and of the master, and somehow feel that there is a failure of justice, yet I am compelled, as was the learned judge of the district court, to give judgment against the United States, and in favor of the claimant, who, under the peculiar law aforesaid, is allowed to come into court with not the cleanest hands, and compel a judgment in his favor.

The judgment and findings of the district court are affirmed.